**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GOL LINHAS AÉREAS INTELIGENTES S.A. SECURITIES LITIGATION | Case No. 1:20-cv-04243-RPK-TAM |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT** <br><br> **<u>ORAL ARGUMENT REQUESTED</u>** <br><br> DATE OF SERVICE:  JULY 21, 2021 |

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Avenue of the Americas
New York, NY  10019-6064
Phone:  (212) 373-3000
Fax:  (212) 757-3990

*Attorneys for Defendants*

**Table of Contents**

**Page**

Argument ..............................................................................................................................1

I.      The AC Fails to Allege a Material Misstatement. ..............................................................1

        A.      As Plaintiffs Admit, GOL Had No Independent Duty to
                Disclose KPMG's Draft Audit Findings and Made No
                Affirmative Misstatement Concerning the Purported Fraud. ....................................1

        B.      GOL Had No Duty to Disclose KPMG's Draft Audit Findings. ............................2

                1.      The AC Fails to Allege that KPMG's
                        Findings Existed or Were Known Earlier. ..................................................2

                2.      GOL Did Not Speak to the Relevant "Issue or Topic."..............................4

                3.      GOL's Statements Were Not False or Misleading. ...................................5

                4.      GOL's Statements Are Puffery, Forward-Looking, and/or Opinions.........7

II.     The AC Fails to Allege a Strong Inference of Scienter. .....................................................9

III.    The AC Fails to Allege Loss Causation.............................................................................11

IV.     The AC Fails to Allege a Control-Person Claim. ..............................................................12

Conclusion .........................................................................................................................12

## **Table of Authorities**

**Page(s)**

**Cases**

*In re Alstom SA Sec. Litig.*,
  454 F. Supp. 2d 187 (S.D.N.Y. 2006)........................................................................................10

*Belfon* v. *Credit Check Total Consumerinfo.com, Inc.*,
  2018 WL 4778906 (E.D.N.Y. Oct. 1, 2018)................................................................................2

*Berger* v. *Beletic*,
  248 F. Supp. 2d 597 (N.D. Tex. 2003) .........................................................................................6

*Caiola* v. *Citibank, N.A., N.Y.*,
  295 F.3d 312 (2d Cir. 2012)..........................................................................................................4

*Carlson* v. *Xerox Corp.*,
  392 F. Supp. 2d 267 (D. Conn. 2005)........................................................................................10

*In re CDNow, Inc. Sec. Litig.*,
  138 F. Supp. 2d 624 (E.D. Pa. 2001) ...........................................................................................6

*Das* v. *Rio Tinto PLC*,
  332 F. Supp. 3d 786 (S.D.N.Y. 2018).......................................................................................10

*De Vito* v. *Liquid Holdings Grp., Inc.*,
  2018 U.S. Dist. LEXIS 217963 (D.N.J. Dec. 31, 2018)..............................................................4

*In re Dynagas LNG Ptnrs. LP Sec. Litig.*,
  504 F. Supp. 3d 289 (S.D.N.Y. 2020).........................................................................................8

*In re Ebix, Inc. Sec. Litig.*,
  898 F. Supp. 2d 1325 (N.D. Ga. 2012) ........................................................................................6

*Freudenberg* v. *E\*Trade Fin. Corp.*,
  712 F. Supp. 2d 171 (S.D.N.Y. 2010).......................................................................................12

*Hammer* v. *Frontier Fin. Corp.*,
  2011 U.S. Dist. LEXIS 169245 (W.D. Wash. Sept. 7, 2017)......................................................4

*Howard* v. *Liquidity Servs.*,
  177 F. Supp. 3d 289 (D.D.C. 2016) ...........................................................................................12

*Iowa Pub. Emps.' Ret. Sys.* v. *MF Glob., Ltd.*,
  620 F.3d 137 (2d Cir. 2010)..........................................................................................................7

## Table of Authorities
## (Continued)

Page(s)

*Kalnit* v. *Eichler*,
264 F.3d 131 (2d Cir. 2001)........................................................................................9

*In re Level 3 Commc'ns. Sec. Litig.*,
667 F.3d 1331 (10th Cir. 2012) .................................................................................7

*Leykin* v. *AT&T Corp.*,
423 F. Supp. 2d 229 (S.D.N.Y. 2006),
*aff'd,* 216 F. App'x 14 (2d Cir. 2007)...............................................................11, 12

*Luna* v. *Marvell Tech. Grp.*,
2017 U.S. Dist. LEXIS 75262 (N.D. Cal. May 17, 2017) ......................................10

*Matrixx Initiatives, Inc.* v. *Siracusano*,
563 U.S. 27 (2011)....................................................................................................4

*SEC* v. *Merch. Cap. LLC*,
483 F.3d 747, 770-71 (11th Cir. 2017) .....................................................................4

*In re Morgan Stanley Information Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010).......................................................................................4

*N. Port Firefighters' Pension-Local Option Plan* v. *Fushi Copperweld, Inc.*,
929 F. Supp. 2d 740 (M.D. Tenn. 2013)..................................................................10

*n re Gen. Elec. Co. Sec. Litig.*,
857 F. Supp. 2d 367 (S.D.N.Y. 2012).......................................................................7

*In re OCA, Inc. Sec. & Derivative Litig.*,
2006 U.S. Dist. LEXIS 90854 (E.D. La. Dec. 14, 2006).......................................10

*Omnicare* v. *Laborers Dist. Council Constr. Indus.*,
575 U.S. 175 (2015)...............................................................................................8, 9

*Panther Partners, Inc.* v. *Ikanos Commc'ns, Inc.*,
538 F. Supp. 2d 662 (S.D.N.Y. 2008),
*aff'd,* 347 F. App'x 617 (2d Cir. 2009)......................................................................2

*Plumbers & Steamfitters Loc. 137 Pension Fund* v. *Am. Exp. Co.*,
2017 WL 4403314 (S.D.N.Y. Sept. 30, 2017),
*aff'd*, 773 F. App'x 630 (2d Cir. 2019)......................................................................5

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017) ...................................................................................7

## Table of Authorities
### (Continued)

Page(s)

*Ressler* v. *Liz Claiborne, Inc.*,
75 F. Supp. 2d 43 (E.D.N.Y. 1998),
*aff'd*, 189 F.3d 460 (2d Cir. 1999) ............................................................................................2, 9

*San Leandro Emergency Med. Grp. Profit Sharing Plan* v. *Philip Morris Cos.*,
75 F.3d 801 (2d Cir. 1996).............................................................................................................3

*In re Sanofi-Aventis Sec. Litig.*,
774 F. Supp. 2d 549 (S.D.N.Y. 2011)............................................................................................7

*In re Signet Jewelers Ltd. Sec. Litig.*,
2018 U.S. Dist. LEXIS 199809 (S.D.N.Y. Nov. 26, 2018) ...........................................................7

*Slayton* v. *Am. Exp. Co.*,
604 F.3d 758 (2d Cir. 2010)..........................................................................................................8

*Solow* v. *Citigroup Inc.*,
507 F. App'x 81 (2d Cir. 2013) ...................................................................................................12

*In re SunEdison, Inc. Sec. Litig.*,
300 F. Supp. 3d 444 (S.D.N.Y. 2018)............................................................................................9

*Tongue* v. *Sanofi*,
816 F.3d 199 (2d Cir. 2016)...........................................................................................................9

*In re Vivendi S.A. Sec. Litig.*,
838 F.3d 223 (2d Cir. 2016)...........................................................................................................4

**Statutes**

15 U.S.C. § 78u-5 ..........................................................................................................................8

Plaintiffs' opposition brief essentially concedes that GOL *accurately* disclosed its strong financial performance for 4Q19 and 1Q20, while warning of the devastating effects of the COVID-19 pandemic, including a 94.5% reduction in bookings by April 2020, and significant measures to preserve liquidity and weather the pandemic.  Totally ignoring GOL's real-time warnings about the impact of the pandemic, Plaintiffs' principal theory of liability is that GOL's "literally true" (Opp'n 19) statements reporting results for those two quarters gave rise to a duty to "tell the whole truth" (*id.* at 11).  Plaintiffs equate the "truth" with an obligation to disclose KPMG's draft audit findings (namely, a going-concern qualification and material weaknesses) *before* the audit was completed.  This argument is simply a reformulation of the proposition that a company has a duty to pre-announce audit findings, even though the law is clear, as Plaintiffs concede, that GOL had no "independent duty" to do so (*id.* at 12-13).  Plaintiffs' opposition brief also fails to offer any motive for any GOL employee to lie about the audit, nor does it explain how—since GOL never addressed the potential results of the audit during the class period—Plaintiffs' purported losses could possibly be caused by the alleged misstatements.

For these reasons, as explained more fully below, the AC should be dismissed.

## Argument

### I.     The AC Fails to Allege a Material Misstatement.

#### A.     As Plaintiffs Admit, GOL Had No Independent Duty to Disclose KPMG's Draft Audit Findings and Made No Affirmative Misstatement Concerning the Purported Fraud.

Plaintiffs now admit, as they must, that GOL had no "independent duty to disclose" KPMG's findings earlier.  Opp'n 12-13.  Under black-letter law, there is no duty to disclose audit findings before the auditor issues its final report.  Mot. 9, 13, 15 (collecting cases).  A contrary rule would generate endless litigation, after each and every adverse audit finding, based on the theory that the issuer should have disclosed the audit finding earlier.

Plaintiffs further admit that GOL's statements were "literally true" (Opp'n 19) and that any material weaknesses "did not cause the financial statements to be misstated" (*id.* at 17). Plaintiffs also fail to refute that GOL did not make any affirmative misstatement about 2019 or 1Q20 performance; the effects of the pandemic or its response thereto; or its liquidity or cash position. Mot. 4-11, 14-18. By failing to respond, Plaintiffs concede these points. *See Belfon* v. *Credit Check Total Consumerinfo.com, Inc.*, 2018 WL 4778906, at *8 (E.D.N.Y. Oct. 1, 2018).

**B.    <u>GOL Had No Duty to Disclose KPMG's Draft Audit Findings.</u>**

Unable to allege an independent duty to disclose or a relevant affirmative misstatement, Plaintiffs argue that GOL's truthful statements imposed "'a duty to tell the whole truth,'" which purportedly included KPMG's draft audit findings. Opp'n 11-22 (quoting *In re Vivendi S.A. Sec. Litig.*, 838 F.3d 223, 258 (2d Cir. 2016)). That theory fails for several reasons.

**1.    <u>The AC Fails to Allege that KPMG's<br>Findings Existed or Were Known Earlier.</u>**

Parroting the AC, the Opposition repeatedly asserts that KPMG reached its conclusions and shared them with GOL "at least as early as February 2020 and/or no later than May 3, 2020." AC ¶¶ 8, 106, 123; Opp'n 2, 9. But, in contravention of the PSLRA and Rule 9(b), Plaintiffs fail to identify particularized facts (who, what, when, and where) or to attribute them to a plausible source of information (such as a confidential witness). Mot. 17 n.11; *Ressler* v. *Liz Claiborne, Inc.*, 75 F. Supp. 2d 43, 52-53 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 460 (2d Cir. 1999). Take "when," for example. Plaintiffs hedge their bets with a wide four-month date range, made longer by the "at least as early" qualifier. This allegation is no different than the general allegation that KPMG shared its audit findings with GOL some time before GOL disclosed them. That vexatious claim would be available in every case. *Panther Partners, Inc.* v. *Ikanos Commc'ns, Inc.*, 538 F. Supp. 2d 662, 669-70 (S.D.N.Y. 2008) (rejecting "reverse-engineered" allegation

that fact was known before statement), *aff'd,* 347 F. App'x 617 (2d Cir. 2009).[1]

Plaintiffs attempt to fix this defect by citing the PCAOB's Auditing Standard 1301. Opp'n 7-8, 12, 14.  AS 1301 says that the auditor generally should communicate with the audit committee in a "timely" manner and "prior to the issuance of the audit report."  Opp'n 7, 14; AC ¶ 48.  Beyond those generalities, the timing "depends" on the facts and circumstances of a particular audit.  AS 1301 ¶ 26.  That standard sheds no light on whether or when, in a particular audit, a particular issue was investigated by the auditor or discussed with the audit committee.

In a sleight of hand, after reciting the auditing standard, the AC concludes that KPMG *must have* made its findings "early in its audit" process.  Opp'n 3, 8, 12, 14, 17; AC ¶¶ 8, 106, 122-23.  That is pure speculation.  The AC contains no factual allegation showing when KPMG formed its opinion, discussed it with GOL, or finalized its audit.  Moreover, that GOL did disclose KPMG's "probabl[e]" findings two weeks prior to the June 29 audit report contradicts Plaintiffs' supposition that the findings were reached months ahead of disclosure.  AC ¶ 9.[2]

Nor can the timing of the 2019 audit of Avianca, a completely different company, shed any light on the timing of GOL's 2019 audit.  Mot. 24 n.14; *see* Opp'n 4, 14-15, 26.

In addition to being unsupported, the allegation is implausible.  GOL disclosed that KPMG's going-concern qualification was caused by the COVID-19 pandemic (Mot. 10, 14; Ex. 15 at 11), which began to affect GOL in mid-March 2020, getting worse thereafter (Mot. 5-6 & n.4, 14).  It is implausible that KPMG would doubt GOL's going-concern status in February

---

[1]   Plaintiffs fail to distinguish *San Leandro Emergency Med. Grp. Profit Sharing Plan* v. *Philip Morris Cos.*, 75 F.3d 801 (2d Cir. 1996) (cited Mot. 13).  In that case, plaintiff alleged "the existence of confidential company sales reports that revealed the larger decline in sales."  *Id.* at 812.  Plaintiff said those sales reports were generated at least 3 weeks before Philip Morris announced a 8.3% drop in sales (*i.e.*, before the last of the statements alleged to be misleading).  *Id.*  The Second Circuit called this an "unsupported general claim" that plaintiff "allege[d] no circumstances to support."  *Id.*

[2]   Plaintiffs wrongly say "Defendants do not dispute the audit timeline."  Opp'n 14.  Defendants do dispute Plaintiffs' allegations.  But the issue on this motion is whether the AC is well-pleaded, which it is not.

3

based on a pandemic that had not yet impacted GOL.  Plaintiffs protest that they do not

"concede" that KPMG's doubts were caused by the pandemic (Opp'n 15), but the relevant issue

is whether the AC alleges otherwise, which it does not.

### 2.     GOL Did Not Speak to the Relevant "Issue or Topic."

Even if KPMG had communicated draft audit findings, GOL would have had no duty to

disclose them.  An issuer owes the "whole truth" only on an "issue or topic" to which it chooses

to speak.  *Vivendi*, 838 F.3d at 258.  Here, the relevant issue is KPMG's 2019 audit findings.

GOL never speculated in advance about KPMG's findings.  Mot. 14, 16.  Plaintiffs do not

dispute that.  Thus, GOL did not owe the "whole truth" on that topic until it chose to speak.

In an attempt to conflate the topics of GOL's statements with KPMG's audit, Plaintiffs

define the "issue" as "GOL's financial strength."  Opp'n 12-13, 16.  Plaintiffs say that, by

making "positive remarks about [its] business" (*id.* at 16), GOL assumed a duty to tell the whole

truth about its "financial strength," which, they say, included KPMG's draft findings.

The cases cited by Plaintiffs do not support that overbroad definition of a "topic."[3]  The

whole-truth doctrine cannot be used to impose a "generalized duty."  *In re Morgan Stanley

Information Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010) (cited Opp'n 11-12).  In that case,

---

[3]   Plaintiffs' cases are inapposite because they involved non-generalized topics.  *Matrixx Initiatives, Inc.* v. *Siracusano*, 563 U.S. 27, 45-47 (2011) (Opp'n 12) (topic was whether Zicam caused side-effect of anosmia (loss of smell); Matrixx said reports of side-effect were "completely unfounded," while in reality it possessed substantial reports of that side-effect); *Vivendi*, 838 F.3d at 249-53 (Opp'n 11) (topic was Vivendi's "liquidity risk"; Vivendi falsely projected free cash flow sufficient to service its debt, while in private, executives projected no free cash flow); *Caiola* v. *Citibank, N.A.*, *N.Y.*, 295 F.3d 312, 328-30 (2d Cir. 2012) (Opp'n 15) (topic was how Citibank would hedge risk of Caiola's trading; Citibank said that it would use "delta" hedging, but did not).  Even Plaintiffs' out-of-circuit cases do not support their argument.  *SEC* v. *Merch. Cap. LLC*, 483 F.3d 747, 770-71 (11th Cir. 2017) (Opp'n 13) (touting of executive's business experience at prior enterprise imposed duty to disclose bankruptcy of that same enterprise); *De Vito* v. *Liquid Holdings Grp., Inc.*, 2018 U.S. Dist. LEXIS 217963, at *24-25, *33 (D.N.J. Dec. 31, 2018) (Opp'n 13) (topic was Liquid's revenue projections; Liquid projected revenue from an account receivable it knew to be uncollectible); *Hammer* v. *Frontier Fin. Corp.*, 2011 U.S. Dist. LEXIS 169245, at *7-9 (W.D. Wash. Sept. 7, 2017) (Opp'n 13) (topic was bank's capitalization; Frontier said it was "well-capitalized" and "had not heard anything negative from" prudential regulator, even though that regulator had told Frontier it was undercapitalized).

4

Morgan Stanley prepared prospectuses that spoke to the "principal investment strategies" and "principal risks" of mutual funds. *Id.* at 365. Plaintiffs argued that Morgan Stanley assumed a duty to tell the whole truth about the funds' strategies and risks; and that it failed to disclose the strategy of relying on Morgan Stanley's research analysts, and the risk that such research was tainted by conflicts of interest. *Id.* As the Second Circuit explained, that gerrymandered topic "stretches these principles past their logical breaking point." *Id.* at 366. So too here. A duty to tell the "whole truth" about "financial strength" would be an impermissible "generalized duty." *See also Plumbers & Steamfitters Loc. 137 Pension Fund* v. *Am. Exp. Co.*, 2017 WL 4403314, at *13 (S.D.N.Y. Sept. 30, 2017) ("duty is not boundless"; "revealing one fact about a subject does not trigger a duty to reveal all facts on the subject;" "defendants' representations" should be examined "together and in context"), *aff'd*, 773 F. App'x 630 (2d Cir. 2019).

### 3.   **GOL's Statements Were Not False or Misleading.**

Even if GOL had spoken on the topic (it did not), its statements were not false.

**"Going Concern" Qualification**. The February 20 earnings report for 4Q19 was published before the first COVID-19 case in Brazil. Mot. 6, 14. It truthfully reported that 2019 was an "outstanding year," which it attributed to an "exceptional customer experience," among other strengths. *Id.* at 5; AC ¶¶ 6, 82. Those statements in no way promised that GOL would not face challenges in the event of a pandemic. Mot. 5-6, 14, 18. And the May 4 earnings report for 1Q20, which was published during the pandemic, disclosed, among other things, "stress," a "crisis," and a "storm." AC ¶¶ 87-88. GOL's description of the extraordinary steps it was taking to withstand the pandemic underscored, rather than downplayed, the scope of the challenges. Mot. 7-9, 14. Indeed, GOL's prior disclosures in March and April further disclosed the challenges, including a reduction by April of **94.5%** in seat bookings. *Id.* at 6-8; Ex. 13 at 1. Incredibly, the Opposition ignores GOL's transparent and repeated disclosures about the

5

draconian effects COVID-19 had wrought.

GOL did not promise, in either report, that there was no substantial doubt that it would continue as a going concern until June 2020.  Nor could investors reasonably perceive either report to imply such an opinion from KPMG, as both reports were labelled "unaudited."  Ex. 6 at 6-12, 16-19; Ex. 12 at 2, 7-14, 16-18.  While Plaintiffs note the reports' narrative references to working capital, Opp'n 9, 18, 21; AC ¶¶ 6, 84, 87, they ignore the quarterly disclosures of an increase in GOL's working capital *deficit*: from ~R$5.4 billion to ~R$7.2 billion.  Ex. 6 at 18; Ex. 12 at 17.[4]  It was not misleading to describe the steps GOL was taking to try to increase working capital while accurately disclosing a deepening working capital deficit.[5]

**Material Weaknesses.**  Plaintiffs cite no case that supports a duty to disclose material weaknesses that—as here—"did not cause the financial statements to be misstated."  Opp'n 17.[6]  Plaintiffs point to GOL's "positive remarks about [its] business," Opp'n 16, but those remarks had nothing to do with internal controls, in the Smiles program or otherwise.[7]  Mot. 16.  Unable to find a statement about internal controls during 2019, Plaintiffs reach back to statements from

---

[4]    Working capital = Current assets – Current liabilities.  The February 20 report showed current assets of R$4,927,377,000 and current liabilities of R$10,362,600,000.  Ex. 6 at 18.  The May 4 report showed current assets of R$4,871,612,000 and current liabilities of R$12,134,440,000.  Ex. 12 at 17.

[5]    Plaintiffs fail to distinguish *Berger* v. *Beletic*, 248 F. Supp. 2d 597 (N.D. Tex. 2003), and *In re CDNow, Inc. Sec. Litig.*, 138 F. Supp. 2d 624 (E.D. Pa. 2001) (cited Mot. 13).  Plaintiffs say that defendants in these cases "did not make statements that were rendered misleading by their failure to disclose the 'going concern' qualification" (Opp'n 12), which is true, but plaintiffs make no attempt to distinguish defendants' statements in those cases.  In *Berger*, the issuer said that it had the "financial resources needed to fund its operating and capital requirements for 2001 [the next year]."  248 F. Supp. 2d at 602.  In *CDNow*, a merger target said that the post-merger company would have "adequate cash flow," when in fact the acquirer's cash flow was insufficient to service the target's debts, and then, after the merger failed, that it would still "absolutely survive."  138 F. Supp. 2d at 629-31.  Those statements are much closer to the subject-matter of a going-concern qualification than GOL's statements, and yet still did not give rise to a duty to disclose.

[6]    *In re Ebix, Inc. Sec. Litig.*, 898 F. Supp. 2d 1325 (N.D. Ga. 2012) (Opp'n 17), does not hold otherwise.  There, the internal control deficiencies "resulted in overstatement of Ebix's net income."  *Id.* at 1329.

[7]    That "Smiles accounted for 52% and 32% of GOL's net income" (Opp'n 17) is irrelevant because the AC admits that GOL correctly reported Smiles income.  Mot. 10-11, 17; AC ¶ 121.  In addition, the AC fails to plead the requisite details with particularity.  Mot. 17 n.11.

6

*2016 and 2018* (Opp'n 16), which accurately described controls during prior periods and were not restated. Mot. 16 n.9. And, again, Plaintiffs' theory relies upon their characterization of GOL's disclosures as "positive," when in fact GOL disclosed dire challenges. *Supra*, pp. 5-6.

### 4.    GOL's Statements Are Puffery, Forward-Looking, and/or Opinions.

GOL's February and May statements are not materially misleading, and therefore do not support a fraud claim, for the additional reasons that they are puffery, forward-looking, and/or opinions. Mot. 18-21; Ex. 1 (chart showing each statement and grounds for dismissal).[8]

*Puffery*. The bulk of the statement at issue—such as GOL's claims of "effective balance sheet management," "disciplined working capital management," and "capital structure optimization"—are puffery. Mot. 18-20; Ex. 1. In response, Plaintiffs do not explain how these statements are falsifiable, much less false. *See* Opp'n 17-20. Plaintiffs say that, although "literally true," the statements would have been interpreted by investors as representations that GOL would remain a going concern. *Id.* at 18-19. (Plaintiffs do not make a corresponding claim about material weaknesses, apparently conceding that the statements do not communicate anything about GOL's internal controls.) *Plaintiffs, however, cite no case that has transformed puffing into a going-concern representation.*[9] This is because no reasonable investor could find

---

[8]   *See In re Sanofi-Aventis Sec. Litig.,* 774 F. Supp. 2d 549, 565 (S.D.N.Y. 2011) (as a matter of law, puffery does not impose a duty to disclose because "[n]o reasonable investor" could be led, by puffery, to believe that an issuer has "disclosed all available information" on a topic); *Iowa Pub. Emps.' Ret. Sys.* v. *MF Glob., Ltd.*, 620 F.3d 137, 141 (2d Cir. 2010) ("A forward-looking statement accompanied by sufficient cautionary language is not actionable because no reasonable investor could have found the statement materially misleading.").

[9]   Plaintiffs' cases are inapposite. *In re Level 3 Commc'ns. Sec. Litig.*, 667 F.3d 1331, 1340 (10th Cir. 2012) (Opp'n 18) (not puffery to say that integration process was "substantially done, by that I mean 85% to 90% done"); *In re Gen. Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367, 386-87, 402 (S.D.N.Y. 2012) (Opp'n 18) (not puffery to say that GE had "really high quality" loan portfolio when 42% of borrowers were subprime; in contrast, the Court held that it was puffery for GE to say that it was "safe and secure," had "high margins," and "conservative[ ]" underwriting); *In re Signet Jewelers Ltd. Sec. Litig.*, 2018 U.S. Dist. LEXIS 199809, at *7, *13, *34-37 (S.D.N.Y. Nov. 26, 2018) (Opp'n 18) (not puffery to say that loan portfolio was "very, very, strong" and "very healthy" when 45% was subprime); *In re Quality Sys.*, *Inc. Sec. Litig.*, 865 F.3d 1130, 1136, 1138-39, 1144 (9th Cir. 2017) (Opp'n 18) (not puffery, for company that projected revenue growth of 21-24%, to make claims about sales in a growing "pipeline").

7

that promise in these statements.  *Supra*, pp. 5-6.  To do so would ignore GOL's risk disclosures (and other public information) about the pandemic, as well as GOL's accurate disclosures of other financial data, such as its operating performance and working capital deficit.  *Id.*

**Forward-looking**.  Defendants' predictions—such as that GOL would have "the necessary liquidity to weather the storm"—are protected by the PSLRA's safe harbor for forward-looking statements.  Mot. 20-21; Ex. 1.  "[A] defendant is not liable if the forward-looking statement is identified and accompanied by meaningful cautionary language *or* . . . the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading."  *Slayton* v. *Am. Exp. Co*., 604 F.3d 758, 766 (2d Cir. 2010) (emphasis in original) (Opp'n 20).  Plaintiffs concede, as they must, that these statements were forward-looking, but say GOL's cautionary language was not meaningful and that GOL knew the forward-looking statements were false.  Opp'n 20-21.  Incorrect.  Meaningful cautionary language identifies risk "factors," 15 U.S.C. § 78u-5(c)(1)(A)(i), such as GOL's disclosure of the pandemic.  *Supra*, pp. 5-6.  It does not require an issuer further to identify every possible consequence—such as a going-concern qualification—that might result.[10]  Nor does the AC allege subjective falsity, an independent ground for dismissal of claims premised on forward-looking statements.  Plaintiffs make no attempt to plead that any Defendant disbelieved GOL's statements, and recklessness (even if asserted) would not suffice to save these claims.  *Slayton*, 604 F.3d at 773.

**Opinion**.  Most of GOL's statements are also opinions protected by *Omnicare* v. *Laborers Dist. Council Constr. Indus.*, 575 U.S. 175 (2015).  Mot. 21; Ex. 1.  Plaintiffs assert (without explanation) that these are "facts," "not opinions," (Opp'n 21), but judgments about

---

[10]    Plaintiffs suggest that meaningful cautionary language was required in the earnings release itself (*see* Opp'n 21), but GOL incorporated by reference the risks disclosed in its filed disclosure documents (Mot. 20 n.13), which "suffice[s]" under the safe harbor. *In re Dynagas LNG Ptnrs. LP Sec. Litig.*, 504 F. Supp. 3d 289, 319 (S.D.N.Y. 2020).

8

financial strength or health are opinions. *See, e.g.*, *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 483 (S.D.N.Y. 2018) (descriptions of company's finances and liquidity as "robust," "strong," and "solid" are opinions). Plaintiffs also say, in a two-sentence afterthought, that they have an *Omnicare* omission claim. Opp'n 21-22. Pleading such a claim "is no small task for an investor," *Tongue* v. *Sanofi,* 816 F.3d 199, 209-10 (2d Cir. 2016) (quoting *Omnicare*, 574 U.S. at 194), and the AC makes no attempt to plead what *Omnicare* requires for an omission claim.[11]

## II.   The AC Fails to Allege a Strong Inference of Scienter.

The AC also fails to allege the requisite strong inference of scienter. Mot. 21-26. Plaintiffs concede that the AC does not allege any "motive and opportunity to commit fraud" (*see id.* at 22), and instead claim "strong circumstantial evidence of conscious misbehavior or recklessness" (Opp'n 22). Without motive, "the strength of the circumstantial allegations must be correspondingly greater." *Kalnit* v. *Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). Plaintiffs rely on two circumstances: GOL's purported receipt of KPMG's draft audit findings (*id.* at 23-24); and GOL's retention of E&Y (instead of KPMG) as its auditor for the next year (*id.* at 24-25).

*First*, as addressed above, the AC lacks well-pleaded allegations that KPMG in fact communicated its findings to GOL in draft before the alleged misstatements were made in February and May. *Supra*, pp. 2-4. To allege scienter on the theory that Defendants' "knew facts or had access to information suggesting that their public statements were not accurate" (Opp'n 22), Plaintiffs must specifically identify the "w"s of a particular report. Mot. 22-23; *see also Liz Claiborne*, 75 F. Supp. 2d at 60-61. The AC also fails to allege this for any defendant,

---

[11]   "[T]o avoid exposure for omissions . . . an issuer need only divulge an opinion's basis, or else make clear the real tentativeness of its belief." *Omnicare*, 575 U.S. at 194. Plaintiff "cannot just say that the issuer failed to reveal" the basis for the opinion at issue, or that the "issuer knows, but fails to disclose, some fact cutting the other way." *Id.* at 189, 194. Rather, plaintiff must identify "particular (and material) facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." *Id.* at 194.

including Kakinoff and Lark (Mot. 25-26).  Plaintiffs offer no explanation in the Opposition for why any GOL employee would have lied to investors in February and May, only to preemptively warn investors in mid-June of the impending audit results, and then issue the final audit results later that month.  The far stronger inference is that Defendants made honest efforts to disclose the risks of the COVID-19 pandemic as they unfolded and that GOL's going-concern status was not called into question until the pandemic had raged for several months.

*Second*, because companies often changes auditors, for any number of nonfraudulent reasons, no inference of fraud can be drawn from GOL's decision, ***after*** KPMG's 2019 audit was complete and published, to retain E&Y for its next audit.  Mot. 24-25.  Plaintiffs compare the "firing" of an auditor to the termination of a senior executive.  Plaintiffs misstate the law applicable to a termination,[12] and the analogy is also inapt.  Courts do not draw an inference that an executive was fired for committing fraud without corroborating circumstances, and even then, that inference is not alone sufficient.  *Das* v. *Rio Tinto PLC*, 332 F. Supp. 3d 786, 815 (S.D.N.Y. 2018).  The decision to change auditors between audits, in contrast, is unremarkable and does not suggest fraud by the auditor, much less the issuer.  Mot. 24-25.[13]

---

[12]   Opp'n 25 (citing *Hessefort* v. *Super Micro Comp., Inc.,* 2021 U.S. Dist. LEXIS 63629, at *27 (N.D. Cal. Mar. 29, 2021); *Luna* v. *Marvell Tech. Grp.*, 2017 U.S. Dist. LEXIS 75262, at *10-16 (N.D. Cal. May 17, 2017); *In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187, 208 (S.D.N.Y. 2006)).  *Super Micro Comp.* and *Marvell Tech.* were decided by the same judge, who opined that terminations of executives "do not follow innocent mistakes.  Rather, they customarily, even if not invariably, follow systemic and fraudulent abuse." *Marvell Tech.*, 2017 U.S. Dist. LEXIS 75262, at *15.  That sentiments is contrary to Second Circuit law.  *Alstom* did not apply that standard, but rather involved a termination that coincided with the CEO's description of the conduct as "fraud," which the court considered as one circumstance among many.  454 F. Supp. 2d at 208.

[13]   The cases cited by Plaintiffs, purportedly about auditor terminations, are not on point. *In re OCA, Inc. Sec. & Derivative Litig.*, 2006 U.S. Dist. LEXIS 90854, at *21-32 (E.D. La. Dec. 14, 2006) (Opp'n 24-25) (CWs said issuer concealed information from auditor and it made a noisy withdraw); *Carlson* v. *Xerox Corp.*, 392 F. Supp. 2d 267, 279, 289 (D. Conn. 2005) (Opp'n 25) (drawing inference where KPMG "senior audit engagement partner," who refused to sign off on accounting treatment, was replaced, at Xerox's insistence, with a new partner who did sign off); *N. Port Firefighters' Pension-Local Option Plan* v. *Fushi Copperweld, Inc.*, 929 F. Supp. 2d 740, at 783-87 (M.D. Tenn. 2013) (Opp'n 25) (finding scienter based on insider's personal financial motives, magnitude of errors, and CWs).

Nor can an inference be drawn from errors made during GOL's *2009* audit—more than a decade ago—by yet another auditor, Deloitte. *See* Opp'n 24; AC ¶¶ 71–72. Plaintiffs speculate that GOL "delayed disclosing" KPMG's opinion "in the hopes of changing" it. Opp'n 24. But the AC fails to back that up with facts. That theory is also inconsistent with GOL's pre-announcement of KPMG's "probabl[e]" conclusion, AC ¶ 91, Ex. 14 at Part III, as well as with GOL's management disclosing the same conclusion themselves, AC ¶ 94; Ex. 15 at F-16.

Finally, while Plaintiffs' continue their smear campaign against the Constantino family, the opposition brief fails to draw any connection between those *ad hominem* attacks and the purported fraud pleaded in the AC. Opp'n 4-6, 16.

## III.    The AC Fails to Allege Loss Causation.

The AC also fails to allege loss causation for two reasons. Mot. 26-28.

*First*, the AC fails to allege a "causal connection" between the stock price drop and the alleged misstatements because KPMG's audit letter—which Plaintiffs allege to be the cause of the stock price drop (AC ¶¶ 91-99)—did not "correct" any prior misstatement by GOL, whether actually or constructively. Mot. 26-27. Plaintiffs say it is sufficient that KPMG's audit "revealed to the market that GOL had liquidity problems." Opp'n 28. That theory lacks the essential ingredient of a "correction." Plaintiffs must show the revelation not just of "problems," but of problems previously misstated. KPMG's forward-looking going-concern opinion did not reveal any past liquidity problem. *See Leykin* v. *AT&T Corp.*, 423 F. Supp. 2d 229, 245-46 (S.D.N.Y. 2006) ("going concern" qualification was "dire" but did not "disclose[] that the alleged misrepresentations had been false or misleading"), *aff'd,* 216 F. App'x 14 (2d Cir. 2007).

Plaintiffs protest that a corrective disclosure need not be the "mirror image" of a misstatement, *i.e.*, a "confession of fraud." Opp'n 27-28 (citing *Freudenberg* v. *E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010); *Howard* v. *Liquidity Servs.*, 177 F. Supp. 3d

11

289, 315 (D.D.C. 2016)).  But Plaintiffs' cases do not eliminate the requirement that a corrective disclosure be "corrective."  *Howard*, 177 F. Supp. 3d at 315-16 (Opp'n 27-28).  The AC fails to allege correctiveness even under Plaintiff's looser articulation of the standard.[14]

*Second*, the stock-drop occurred in the context of the COVID-19 pandemic, and the AC ignores the stock-price declines caused by the pandemic.  Mot. 27-28 (collecting cases).  This is an appropriate motion-to-dismiss issue when, as here, the complaint ignores an extreme market-wide dislocation.  *Id.*; *Solow* v. *Citigroup Inc.*, 507 F. App'x 81, 82 (2d Cir. 2013) (complaint "fail[ed] to distinguish the effects of the fraud alleged from those caused by the adverse market conditions" during 2008 financial crisis); *Leykin*, 423 F. Supp. 2d at 246, 248 (complaint failed to allege "any way to separate the effect of the misstatements" from the "market-wide Internet stock collapse").[15]

## IV.     The AC Fails to Allege a Control-Person Claim.

Because Plaintiffs fail to allege a primary violation or that Kakinoff or Lark culpably participated, Plaintiff's Section 20(a) control claim should also be dismissed.  Mot. 28-29.

## Conclusion

Defendants respectfully submit that the AC should be dismissed in its entirety and with prejudice.

---

[14]   Apart from a corrective disclosure, there is also a second way to plead loss causation in this Circuit: "materialization of concealed risks."  *Freudenberg*, 712 F. Supp. 2d at 202-04.  The AC does not allege loss causation under that theory, either.  GOL did not conceal the risk of adverse audit findings by KPMG.  Although Plaintiffs cite cases applying this theory, their brief does not argue materialization-of-a-concealed-risk, and the AC does not allege it.

[15]   Plaintiffs' 2008 financial crisis cases involved misstatements that concealed whether and to what degree the issuer or security was exposed to the market-wide issue.  *See* Opp'n 28-29 (citing *In re GE Sec. Litig.*, 857 F. Supp. 2d 367, 372-76 (S.D.N.Y. 2012); *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 391-94 (S.D.N.Y. 2010); *Loreley Fin. (Jersey) No. 3 Ltd.* v. *Wells Fargo Sec., LLC*, 797 F.3d 160, 164-69 (2d Cir. 2015); *King Cnty.* v. *IKB Deutsche Industriebank AG*, 708 F. Supp. 2d 334, 343-47 (S.D.N.Y. 2010)).  Here, in contrast, there is no allegation that GOL misstated its vulnerability to COVID-19.  Plaintiffs' other cases did not arise during any relevant market-wide crisis.  *See id.* (citing *City of Sterling Heights Police & Fire Ret. Sys.* v. *Abbey Nat'l, PLC*, 423 F. Supp. 2d 348 (S.D.N.Y. 2006); *In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352 (S.D.N.Y. 2009)).

Dated:   July 21, 2021

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By:  */s/ Audra J. Soloway*
    Andrew Gordon
    Audra J. Soloway
    Shane D. Avidan
1285 Avenue of the Americas
New York, NY  10019-6064
Phone:  (212) 373-3000
Fax:  (212) 757-3990
agordon@paulweiss.com
asoloway@paulweiss.com
savidan@paulweiss.com

*Attorneys for GOL Linhas Aéreas Inteligentes S.A., Paulo Sergio Kakinoff, and Richard F. Lark, Jr.*