UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

IN RE GOL LINHAS AÉREAS
INTELIGENTES S.A. SECURITIES          **MEMORANDUM AND ORDER**
LITIGATION                            20-CV-4243 (RPK) (TAM)

----------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

  Plaintiffs Artur Timotheo and Juan Jimenez bring this putative securities class action against Brazilian airline GOL Linhas Areas Inteligentes S.A. and a number of GOL officers. They invoke Section 10(b) of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. § 78j(b), Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5, as and Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Plaintiffs contend that defendants are civilly liable under those sections for statements in a May 2020 earnings report. That report, issued several months into the COVID-19 pandemic, touted GOL's "effective and structured liquidity management," reported a profit for the airline's loyalty program, and noted the company's experience navigating times of stress. Those statements were misleading, plaintiffs argue, because defendants failed to disclose alongside those claims that GOL's auditor had substantial doubt about GOL's ability to continue as a going concern and had identified material weaknesses in GOL's internal controls over financial reporting ("ICFR"). While GOL disclosed these findings in June 2020, plaintiffs allege that defendants must have known of them by the time of the May earnings report.

  Defendants have moved to dismiss plaintiffs' claims. As explained below, defendants' motion is granted. Plaintiffs have failed to adequately plead that the May 2020 earnings report contained material misstatements or omissions of fact, as necessary for liability under Section 10(b) and Rule 10b-5, because they have not adequately pleaded that defendants knew of the

1

auditor findings at the time of the May report. Plaintiffs have also failed to set out facts supporting a strong inference that the defendants acted with an intent to deceive, manipulate, or defraud, as required for liability under those provisions due to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Plaintiffs' claims against the individual defendants under Section 20(a) of the Exchange Act must be dismissed because of the failure of plaintiffs' primary claims under the Exchange Act and Rule 10b-5.

## BACKGROUND

The following facts are drawn from the complaint and are assumed true for the purposes of this order.

On May 4, 2020, "when the world was in the throes of the COVID-19 pandemic," Am. Compl. ¶ 5 (Dkt. #2), GOL issued its earnings report for the first quarter of 2020. The report noted harms that the pandemic had inflicted on the company. For instance, it stated that "[a]s a result of the COVID-19 pandemic, the quarter – which was on target for record results until mid-March – deteriorated rapidly due to the unprecedented situation in the industry." Aff./Decl. in Support of Defs.' Mot. to Dismiss, Ex. 12 at 2 (Dkt. #25-12) ("Defs.' Exs.").[1] Because of declining customer demand, the company explained, starting in mid-March, the airline "began reducing its capacity by 50 to 60% in the domestic market, and by 90 to 95% in the international market." *Ibid.* The airline stated that it planned to cut capacity for the second quarter "approximately 80%," including 100% on international routes, "in the face of an expected 70% decline in revenue y/y." *Id.* 6. The

---

[1] The May earnings statement and June audit report are "incorporated by reference [because] '[plaintiff's] action or defense' is based upon [them], and 'the complaint ... makes a clear, definite and substantial reference' to" those documents. *Off. Sol. Grp., LLC v. Nat'l Fire Ins. Co. of Hartford*, 544 F. Supp. 3d 405, 412 (S.D.N.Y. 2021) (brackets omitted); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

2

company stated that it was "keeping cash use at a minimum," and outlined various "cash preservation initiatives." *Ibid.*

Nevertheless, plaintiffs alleged that a few statements in the May 2020 earnings report were misleadingly upbeat:

- A statement attributed to CEO Paulo Kakinoff that "[w]e are experienced at navigating in times of stress," and that "[b]y acting with speed and decisiveness, we have reduced our fixed costs to preserve the jobs of our employees and the Company's working capital in the short term.  This will provide us with the necessary liquidity to weather the storm";

- A statement attributed to CFO Richard Lark that "[w]e have effective and structured liquidity management.  Even in the face of macroeconomic changes, we maintained our liquidity mix, which puts us in a strong position to face this crisis";

- A statement attributed to GOL that the company had "strong cost control and efficient capacity yield management"; and

- A statement in which GOL—while reporting a loss for the first quarter of 2020—nonetheless reported a profit for its Smiles loyalty program.

Am. Compl. ¶¶ 7, 87-89.[2]

On June 16, 2020—less than two months after issuing the May earnings report—GOL disclosed that its auditor, KPMG International Limited, had informed GOL and its Audit Committee that (1) its report on GOL's "consolidated financial statements . . . will probably

---

[2] The amended complaint also alleged misstatements in GOL's February 2020 earnings report, on a similar theory, *see* Am. Compl. ¶¶ 5-7, but the parties stipulated to dismissal of all claims concerning the February report, *see* Dkt. #44.

include an emphasis paragraph regarding [GOL's] ability to continue as a going concern," and (2) its report on the GOL's ICFR "will probably include one or more material weakness." *Id.* ¶ 91.

On June 29, 2020, GOL filed a Form 20-F with the Securities and Exchange Commission that contained KPMG's audit report. *Id.* ¶¶ 93-94. In the filing, GOL disclosed that its auditor had determined was "substantial doubt" about the company's ability to continue as a "going concern" in light of the unpredictability of the economic crisis trigged by the COVID-19 pandemic. Defs.' Exs., Ex. 15 at 11 (Dkt. #25-15). The audit report also identified four material weaknesses in ICFR. These concerned:

- GOL's general information technology controls that "had failed to prevent errors in measuring net income and revenue for its 'Smiles' frequent flyer loyalty program";
- "[A]uthorizations and administrative functions granted to the Chairman of the Board" including "the ability to initiate and approve certain transactions";
- "[P]reparation and review of [GOL's] consolidated financial statements," and specifically inadequate "policies and procedures related to the identification and disclosure of material uncertainties in the going concern analysis" and "effective review of financial statement information, and related presentation and disclosure requirements."

Am. Compl. ¶¶ 93-95. The report also added that "[t]hese control deficiencies resulted in material misstatements that were corrected in the 2019 consolidated financial statements." *Id.* ¶ 96. Plaintiffs allege these misstatements concerned the Smiles loyalty program. *Ibid.* But the "error was corrected prior to the issuance of the financial statement for 2019[.]" *Id.* ¶ 121.

Plaintiffs filed this putative class action in September 2020, *see* Dkt. #1, and filed the operative amended complaint in March 2021, *see* Dkt. #12. They name as defendants GOL; Kakinoff, GOL's CEO; Lark, GOL's CFO, and Constantino de Oliveira Junior, the chairman of GOL's board of directors; and three other individuals (the "Board Defendants") who served on both the Board of Directors and GOL's Audit Committee.

The lawsuit alleges that the statements plaintiffs highlight in the May 2020 earnings report "were materially misleading" because defendants failed to also disclose that KPMG had advised it of substantial doubt regarding the company's ability to continue as a going concern, as well as of the three ICFR weaknesses ultimately disclosed in June. Am. Compl. ¶ 90. Plaintiffs further allege that defendants must have known about KPMG's "going concern" qualification and ineffective ICFR findings "no later than May 3, 2020," *id.* ¶ 106, when the first quarter earnings report was issued.

GOL, Kakinoff, and Lark have moved to dismiss the complaint, *see* Dkt. #23, as have the Board Defendants, *see* Dkt. #41. Among other arguments, defendants contend that plaintiffs have failed to adequately allege that any of defendants' public statements were materially false or misleading. Defs.' Mem. in Support of Mot. to Dismiss 12-21 (Dkt. #24) ("Defs.' Mem."). Defendants also argue that plaintiffs have not adequately pleaded corporate or individual scienter as required to state a claim under Section 10(b) and Rule 10b-5. *Id.* at 21-26. Finally, defendants argue that because plaintiffs fail to establish a primary violation of the Exchange Act, their control-person liability claim under Section 20(a) against the individual defendants must fail as well. *Id.* at 28-29.

**STANDARD OF REVIEW**

In evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." *Lotes Co., Ltd. v. Hon Hai Precision Indus. Co.,* 753 F.3d 395, 403 (2d Cir. 2014) (quoting *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 108 (2d Cir. 2010), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)). To avoid dismissal, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The complaint, in other words, must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. While the plausibility standard "is not akin to a 'probability requirement,'" it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).

A complaint alleging securities fraud must also satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and the PSLRA by "stating with particularity the circumstances constituting the fraud." *ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)). To satisfy these requirements, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 94 (2d Cir. 2018) (quoting *Emps.' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015)) (internal quotation marks omitted). The PSLRA further requires that the complaint "state with particularity facts giving rise

6

to a strong inference that the defendant acted with the required state of mind." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. § 78u-4(b)(2)).

At the motion-to-dismiss stage, a court may consider only (i) the complaint itself, (ii) documents either attached to the complaint or incorporated in it by reference, (iii) documents the plaintiff relied on and knew of when bringing suit, and (iv) matters in the public record that are subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999).

## DISCUSSION

Plaintiffs' Section 10(b) action is dismissed against all defendants. And since a claim of control-person liability under Section 20(a) of the Exchange Act cannot stand without a primary offense, that claim is dismissed as well.

### I. Section 10(b) Claims

Plaintiffs have not adequately pleaded a claim under Section 10(b) of the Exchange Act or under Rule 10b-5. Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). In turn, Rule 10b-5 implements this section by making it unlawful "for any person, directly or indirectly . . . [t]o make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5.

To state a claim under these provisions, "a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase

7

or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *Setzer v. Omega Healthcare Inv'rs, Inc.*, 968 F.3d 204, 212 (2d Cir. 2020) (quoting *ATSI Commc'ns, Inc.*, 493 F.3d at 105) (internal quotation marks omitted). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319; *see Setzer*, 968 F.3d at 212.

As explained below, plaintiffs' claims are deficient because plaintiffs have not adequately pleaded that defendants made misstatements or omissions of material fact or that defendants acted with scienter.

### a. Plaintiffs have not adequately pleaded materially false statements or omissions.

Plaintiffs contend that defendants are liable under Section 10(b) and Rule 10b-5 on an omissions theory, because their upbeat financial statements left out negative facts revealed in a subsequent auditor report. Pls.' Opp'n to Mot. to Dismiss 11-17 (Dkt. #29) ("Pls.' Opp'n"). But they have failed to adequately plead an actionable omission. Omissions are actionable under Section 10(b) and Rule 10b-5 under limited circumstances. Those provisions "do not create an affirmative duty to disclose any and all material information." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 239 (2d Cir. 2016) (citation and quotation marks omitted). But a company that chooses to speak on a particular matter has "'a duty to tell the whole truth,' 'even when there is no existing independent duty to disclose information' on the issue or topic." *Id.* at 258 (quoting *Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 250 (2d Cir. 2014)) (alterations omitted). Plaintiffs invoke that principle here. Their theory is that when defendants spoke on the topic of GOL's "financial strength" in the May 2020 earnings report, they had a duty to disclose the whole truth— namely, that GOL's auditor had informed the company about a "going concern" qualification and

8

several material weaknesses. Pls.' Opp'n 12, 16. In their view, failing to disclose these concerns rendered GOL's May financial-strength statements fraudulent. *Ibid.*

Defendants can be liable on this theory only if they actually knew of the auditor's conclusions at the time that defendants issued the May earnings report. *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc*., 75 F.3d 801, 812 (2d Cir. 1996). And to adequately plead that defendants were aware of the auditor's conclusions, plaintiffs must "must specifically identify the reports or statements containing the information" in question. *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) (citing *San Leandro*, 75 F.3d at 812). That is, plaintiffs must specify what the report containing those conclusions stated, "who" prepared the report, and "when" defendants became aware of the report. *In re Scholastic Corp. Sec. Litig*., 252 F.3d 63, 72 (2d Cir. 2001) (citing *San Leandro*, 75 F.3d at 812).

*San Leandro* illustrates this rule. The plaintiffs there alleged that a tobacco company which disclosed declining sales figures and change in corporate strategy in April 1993 should have disclosed those facts earlier—when making optimistic statements about the company's health in the first months of 1993. *San* Leandro, 75 F.3d at 812. The Second Circuit held that the plaintiffs' lawsuit had been properly dismissed because the plaintiffs had failed to offer more than "conclusory allegations to support their contention that defendants knew long before the April 2 announcement that [a tobacco brand] was in trouble and that a change in strategy would be necessary." *Ibid.* While the *San Leandro* plaintiffs had claimed that "confidential company sales reports" had revealed to defendants a "larger decline in sales" than the company had initially reported, the Second Circuit found that general allegation about the company reports insufficient. *Id.* at 812-813. It relied on other circuits' decisions holding that "a plaintiff needs to specify the internal reports, who prepared them and when, how firm the numbers were or which company

9

officers reviewed them." *In re Scholastic Corp. Sec. Litig.,* 252 F.3d at 72-73 (discussing *San Leandro*).

Plaintiffs' claim suffers from the same deficiency as the claims in *San Leandro*. The complaint asserts that defendants learned of their auditor's concerns "at least as early as February 2020 and/or no later than May 3, 2020," Am. Compl. ¶ 106, but such an "unsupported general claim . . . .is insufficient to survive a motion to dismiss," *San Leandro*, 75 F.3d at 812 (citations omitted). And plaintiffs have not pointed to specific internal reports from KPMG advising defendants of the auditor's anticipated findings before the May statements. Nor have they specified who prepared such reports, when they were prepared, and who reviewed them. *See In re Scholastic Corp. Sec. Litig.,* 252 F.3d at 72-73.

Plaintiffs fall short in contending that they have nevertheless adequately pleaded an omissions-based claim despite these failings, based on circumstantial evidence. Plaintiffs first argue that KPMG must have informed defendant about its findings of material deficiencies in GOL's ICFR by the time of the May earnings report because of an auditing standard issued by the Public Company Accounting Oversight Board ("PCAOB"). See Am. Compl. ¶¶ 11, 47-48, 104-05; Pls.' Opp'n 14-15, 17. That standard requires auditors to disclose significant deficiencies and material weaknesses "in a timely manner" and "prior to the issuance of the auditor's report." Am. Compl. ¶¶ 100-05. That standard supports an inference that KPMG would have informed GOL of the ICFR weaknesses that the auditor identified sometime before the audit report was completed. Indeed, there is no doubt that KPMG did so, since GOL disclosed the anticipated findings on June 16—two weeks before the audit report was issued. Am. Compl. ¶¶ 91, 93. But an auditing standard requiring "timely" disclosures does not support the inference that KPMG would have disclosed even tentative findings to defendants as early as May 2020. For one thing, plaintiffs

10

provide no basis to conclude that auditors had even reached tentative conclusions about the ICFR deficiencies by that time. While plaintiffs speculate that KPMG would have "concentrated at the outset" on ICFR, Am. Compl. ¶¶ 44, 102, that assertion is not supported by reference to any auditing standard or other source. And even if KPMG would have *started* examining ICFR early in the audit, plaintiffs offer nothing more than speculation to support the conclusion that the auditor would have *finished* examining ICFR early in the audit as well. Nor have they provided a basis to conclude that KPMG would have reached tentative conclusions, and informed GOL's audit committee of them, by the time of the May earnings report. In sum, plaintiffs' inference that KPMG informed GOL's audit committee of its ICFR findings before the May 2020 earnings report rests on little more than speculation.

      Plaintiffs' allegations regarding KPMG's going-concern conclusion are similarly speculative. Plaintiffs assert that "because a 'going concern' is an observation significant to the financial reporting process," KPMG must have told defendants "about the 'going concern' qualification early in its audit process, in a timely fashion." Pls.' Opp'n 12. But as with plaintiffs' allegations regarding ICFR deficiencies, only speculation supports the conclusion that KPMG had come to its going-concern conclusion by May 2020—rather than reaching its conclusion in the following month, when GOL disclosed it. Plaintiffs point to the fact that Avianca—another airline audited by KPMG—acknowledged a "going concern" problem by April 2020. Am. Compl. ¶¶ 107-08. But, of course, KPMG's April identification of a going-concern problem for *Avianca*, based on an analysis of *Avianca's* financial circumstances, says little about when KPMG reached its going-concern conclusion for the separate airline at issue in this case, much less when it communicated that conclusion to any of the defendants. "[T]he Court cannot simply fill in the blanks of the allegations." *Textile Deliveries, Inc. v. Stagno*, No. 90-CV-2020 (JFK), 1991 WL

11

167077, at *5 (S.D.N.Y. Aug. 16, 1991); *see First Cap. Asset Mgmt., Inc. v. Brickellbush, Inc.*, 219 F. Supp. 2d 576, 582 (S.D.N.Y. 2002), (finding a factual inference insufficient where the inference was as consistent with lawful activity as with fraud), *aff'd sub nom. First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004).

Plaintiffs have not pleaded an actionable falsehood or omission on any other theory. Plaintiffs do allege that in its May earning report GOL "report[ed] a profit . . . for Smiles," Am. Compl. ¶ 89, and that the audit report concluded that GOL miscalculated its Smiles profits in some way, *id.* ¶ 121. Yet plaintiffs do not specifically allege that the profit calculation in the May earning report was wrong. Instead, plaintiffs appear to allege only that the statement regarding Smiles profits in the May report was misleading because defendants failed to disclose alongside it the ICFR and going-concern deficiencies discussed above. *Id.* ¶ 90. Plaintiffs have therefore not pleaded with particularity any alternative claim that the profit reported for Smiles during the May earnings statement was simply inaccurate. *See Charles Schwab Corp*, 883 F.3d at 94. Even if plaintiffs had adequately pleaded that theory in their complaint, they forfeited it by failing to defend it in their brief opposing defendants' motion to dismiss. *See Scott v. JPMorgan Chase & Co.*, No. 13-CV-646 (KPF), 2014 WL 338753, at *10 (S.D.N.Y. Jan. 30, 2014) (collecting cases), *aff'd*, 603 F. App'x 33 (2d Cir. 2015). In sum, plaintiffs have not adequately pleaded any actionable falsehood or omission.

### b. Plaintiffs have failed to adequately plead fraudulent intent.

For similar reasons, plaintiffs have failed to adequately plead fraudulent intent. A plaintiff can plead fraudulent intent "by alleging facts to show that defendants had both motive and opportunity to commit fraud," *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001) (citation and internal quotation marks omitted)—a theory plaintiffs do not pursue here, Pls.' Opp'n 22.

12

Alternatively, plaintiffs may plead fraudulent intent "by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Kalnit*, 264 F.3d at 138 (citation and internal quotation marks omitted). Conscious misbehavior or recklessness can be established through allegations of "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* at 142 (quoting *Honeyman v. Hoyt (In re Carter-Wallace, Inc. Sec. Litig.)*, 220 F.3d 36, 39 (2d Cir. 2000)). Plaintiffs must, as a general matter, "specifically allege[] defendants' knowledge of facts or access to information contradicting their public statements." *Novak*, 216 F.3d at 308. Under such circumstances, scienter may be inferred because "defendants knew or . . . should have known that they were misrepresenting material facts related to the corporation." *Ibid.*

Plaintiffs fall short of these standards. Plaintiffs suggest that they have adequately pleaded scienter because of defendants' purported receipt of KPMG's draft audit findings prior to the May earnings report. Pls.' Opp'n 23. But as explained above, plaintiffs have failed to adequately allege that defendants received KPMG's findings prior to the May earnings statement. *See* pages 8-12, *supra*. Accordingly, plaintiffs have not demonstrated that defendants had "knowledge of facts or access to information contradicting their public statements." *Novak*, 216 F.3d at 308; *e.g.*, *Johnson v. Siemens AG*, No. 09-CV-5310 (JG) (RER), 2011 WL 1304267, at *15-18 (E.D.N.Y. Mar. 31, 2011) (finding scienter lacking where plaintiff did not "specially allege that . . . management ever received any of the reports identified in the amended complaint").

Plaintiffs next point to GOL's decision to terminate KPMG after the publication of the audit report in June. Pls.' Opp'n 24-25; *see* Am. Compl. ¶¶ 116-17. But companies can change auditors for many reasons, and if defendants were trying to conceal KPMG's conclusions, it seems

13

more logical that GOL would have terminated its relationship with KPMG *before* the company filed an audit report that expressed those concerns. Without additional allegations suggesting a culpable explanation, the mere fact the GOL terminated KPMG does not support an inference of conscious misbehavior or recklessness. *Cf. In re OCA, Inc. Sec. & Derivative Litig.*, No. 05-CV-2165, 2006 WL 3747560, at *22 (E.D. La. Dec. 14, 2006) (making inference where company terminated auditor and then provided altered records to new auditor). Plaintiffs have failed to adequately allege scienter.

## II. Section 20(a)

Plaintiffs' claims of control-person liability under Section 20(a) of the Exchange Act against the individual defendants must also be dismissed. Section 20(a) establishes liability for those who control persons or entities who violate provisions of the Exchange Act. *See* 15 U.S.C. § 78t(a). "To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc.*, 493 F.3d at 108. Because plaintiffs fail to adequately plead a primary violation of the Exchange Act, their claims of control-person liability under Section 20(a) must also be dismissed. *See ibid.*[3]

## CONCLUSION

Plaintiffs' claims are dismissed without prejudice. Plaintiffs have thirty days to file a revised complaint. The new complaint must be captioned "Second Amended Complaint" and bear

---

[3] The Board Defendants also argue that the Court lacks personal jurisdiction over two Board Defendants who reside in Brazil. *See* Mem. of L. in Support of Mot. to Dismiss 5-9 (Dkt. #41-1). Because plaintiffs have failed to state a claim, however, the Court need not decide this argument. *See Chevron Corp. v. Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012).

the same docket number as this Order.  If plaintiffs do not file a Second Amended Complaint within thirty days, judgment shall be entered dismissing the case.

SO ORDERED.

                                                              */s/ Rachel Kovner*
                                                             RACHEL P. KOVNER
                                                            United States District Judge

Dated: April 12, 2022
        Brooklyn, New York